### MARTENIS v. AMERICAN RICE MILLING CO., Inc.

#### No. 1797.

Court of Appeal of Louisiana. First Circuit.
Jan. 11, 1938.

Griffin T. Hawkins, of Lake Charles, for appellant.

Pugh & Buatt, of Crowley, for appellee.

LE BLANC, Judge.

Plaintiff appeals from a judgment in the lower court which sustained a plea of prescription and dismissed his suit at his costs. The plea was based on article 3536 of the Revised Civil Code, which provides that, among several actions therein specified, the one resulting from offenses or quasi offenses is prescribed by one year. The defendant had also filed an exception of no right or cause of action, but, in view of its decision on the plea of prescription, the court, we take it, thought that it was unnecessary to consider the exception. At any rate no action was taken regarding the same. In an answer to the appeal in this court, defend-

*Rehearing denied Feb. 15, 1938; writ of certiorari denied March 7, 1938.

ant prays, in the alternative, and only in the event it should be found that the judgment sustaining the plea of prescription is erroneous, the exception of no right or cause of action be considered and that the same be maintained.

After having alleged that the defendant is indebted unto him in the sum of $1,900 with interest, plaintiff sets out his cause of action in the second paragraph of his petition in the following words: "Petitioner further shows that the indebtedness hereinabove set out is the result of *unlawful action* of said American Rice Milling Co., Inc., wherein on July 6, 1931, in suit entitled 'American Rice Milling Co., Inc., v. Baltic American Feed Corporation, Inc.,' No. 16, 138 of the Civil Docket of the Fourteenth Judicial District Court in and for the Parish of Calcasieu, State of Louisiana, did seize and unlawfully attach 1000 bags of Brewers rice, marked Fancy Baltic Feed No. 1 Transit, 47 bags of which was, at the time of seizure and attachment, in Shed No. 2, Section H, and the remaining 953 bags in Shed No. 2, Section D, on the docks of the Lake Charles Harbor & Terminal District." (Italics ours).

In the succeeding paragraph of his petition, plaintiff details one of the items of loss occasioned by the sale of the rice under order of court, and again avers that on this item amounting to $1,601.65, the loss was "occasioned by the unlawful acts of defendant."

In subsequent paragraphs he sets out further items of loss which all go to make the aggregate of the amount claimed as damages, and again alleges that the total amount of damages suffered by him was because of "the wrongful acts of the defendant." He avers, of course, that he was the lawful owner and in possession of the rice at the time of its seizure, and was held to be such owner and entitled to the proceeds of the sale thereof by judgment of court rendered in the attachment suit on May 17, 1932.

The present suit was filed March 4, 1933, which is more than a year from the date on which the rice was seized, according to the allegations of plaintiff's petition, but less than a year from the date of the judgment of court decreeing him to be the owner. One of the issues raised in the lower court, as we understand from counsel for defendant, was that, conceding the action to be one resulting from a quasi offense, the prescriptive period only began to run from the date of the judgment decreeing the question of ownership, and therefore the suit is not barred. Before this court that point is not urged in brief of counsel now representing the plaintiff, and they seem to have rested their side of the question involved entirely on the proposition that the action is ex contractu, arising out of the attachment bond which they state in brief, "was assuredly given" in the attachment suit.

The two contentions made involve purely questions of law and the jurisprudence is clearly against both.

█ The very allegations of the present petition seem to refute the idea that plaintiff is endeavoring to hold the defendant in damages because of any protection he might have derived, as owner of the seized property, out of the attachment bond. As appears in the paragraph setting out the cause of action which we have copied in full, the indebtedness claimed came into existence because of the *unlawful action* of the defendant in having attached plaintiff's rice, and not as a result of the bond which it was required to give and by which it may have bound itself in accordance with the provisions of the law. But going further, and granting there was the regular attachment bond furnished, necessarily, as conceded by counsel for plaintiff, it was a bond in favor of the defendant in the attachment suit, and, as a contract, could afford no protection to the present plaintiff who at that time was a stranger to the proceeding and only came into it subsequently as an intervener.

█ In this connection, we have before us the very same situation which was presented to the court in the early case of Edwards v. Turner, 6 Rob. 382, and the same contention being here made as was made by the plaintiff in that case in resisting a plea of prescription. The syllabus, which reflects the holding of the court on that point, reads:

"An attachment bond, executed in favor of the defendant, does not enure to the benefit of a third person who intervenes and establishes his right to the property. Not being a party to the bond, and there being no privity of contract between him and the plaintiff in the attachment suit, he cannot sue on it.

"As between the principal and surety in an attachment bond, and the defendant in whose favor it is executed, a claim for damages for an illegal attachment is ex contractu; but if the property of a third person be attached under proceedings au-

thorizing the seizure of that of the defendant, it is a trespass, and the right of the party injured to obtain reparation arises neither from a contract, nor quasi-contract, but under art. 2294 [now 2315] of the Civil Code, which declares that every act of man which causes damage to another, obliges him by whose fault it happened, to repair it."

 The decision in that case stands as the law on the point therein involved and now urged again, as far as we are able to ascertain. The case is not only authority on that point, but also on the other contention which we have stated seems to have been presented in the lower court, that is, with regard to the date from which the prescription here pleaded begins to run. We quote from the syllabus, which we say, once more, reflects the holding of the court on the point: "The attachment of the property of a third person, as belonging to the defendant, is a quasi-offence; and the action by the owner for damages is prescribed by one year from the time of the injury—that is, from the time of the seizure, and not from the date of the judgment establishing the title of the owner. C.C. 3501, 3502 [now C.C. arts. 3536, 3537]."

In the case of De Lizardi v. New Orleans Canal & Banking Co., 25 La.Ann. 414, in discussing this point, the court stated: "We concede that there is good reason why the law regulating prescription in such cases ought to be as the counsel contends that it is. But we have no right to alter the positive provision of the code, which declares that prescription runs from the day on which the injury or damage was sustained. C.C. 3537." It is needless almost for us to state that the article of the Code reads exactly now as it did at that time, and that the courts are still governed by its provisions.

We are convinced of the correctness of the judgment appealed from which sustained the plea of prescription, and it is unnecessary therefore for us to give any consideration to the exception of no right or cause of action.

Judgment affirmed.